**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DARIUS HENDERSON, #427897,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-00212** |
| | ) | **Judge Trauger** |
| **T. CRAWFORD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Darius Henderson, a state inmate in custody at the Trousdale Turner Correctional Center (TTCC), filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

The case is before the court for ruling on the plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of

the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

A. LEGAL STANDARD

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181

2

(2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## B. FACTUAL ALLEGATIONS

According to the Complaint, on October 5, 2024, the plaintiff was assaulted in his cell by two gang-affiliated inmates who did not reside in his unit, one of whom threatened to use a homemade knife on the plaintiff if he fought back. (Doc. No. 1 at 12.) The plaintiff sustained significant injuries and received treatment in the medical unit, which then transported him to an outside hospital. (*Id.* at 13.) The hospital physician allegedly wrote an order for the plaintiff to be seen in follow up a few weeks later, and to thereafter be scheduled for surgery. (*Id.*) The plaintiff was returned to TTCC the following day and placed on protective custody. (*Id.*) He did not have further follow up visits or surgery; when he submitted a sick call request to address migraine pain in January 2025, a TTCC nurse, H. Roberts, told him that his previous x-rays showed no significant findings. (*Id.* at 18–19.) The plaintiff has submitted multiple sick call requests to address his

migraine pain and his need for facial surgery but has received no response from the medical unit. (*Id.* at 19.)

On October 14, 2024, a protective custody hearing was held in the plaintiff's case before Defendants Crawford, Mitchell, and Huggins. (*Id.* at 13.) The plaintiff expressed his need to continue in protective custody and to be transferred to a more secure facility. (*Id.*) Crawford was hostile to the plaintiff and stated that he would not be maintained in protective custody. (*Id.*) Defendants Mitchell and Huggins observed Crawford's hostility "but did not intervene." (*Id.*) On November 1, 2024, the plaintiff returned to TTCC's general population, to the same cell in which he had been assaulted, in order to avoid a disciplinary charge of refusing cell assignment. (*Id.* at 14.) He has since been threatened by gang members, summoned to speak with the ranking gang member about making payments to ensure his safety, and forced to defend himself with a walking cane when he was physically threatened in his cell. (*Id.* at 15.) The walking cane incident resulted in his placement in punitive segregation and a disciplinary charge for assaulting an inmate without a weapon. (*Id.*)

Prior to the disciplinary hearing on his assault charge, the plaintiff requested to call two officers as witnesses. (*Id.* at 16.) A staff member, Mrs. Reed, was appointed to assist the plaintiff with preparation for his disciplinary hearing. (*Id.*) Mrs. Reed requested multiple continuances but did not assist the plaintiff with gathering evidence or interviewing witnesses. (*Id.*) On December 31, 2024, the hearing was held before Defendant Shoemaker, and Mrs. Reed did not appear. (*Id.*) Shoemaker did not allow the plaintiff to call witnesses, instead choosing to rely on the staff reports of the incident. (*Id.* at 16–17.) Shoemaker also declined to review video of the incident, stating that the video had already been reviewed. (*Id.* at 17.) Shoemaker told the plaintiff that he had been found guilty of the assault charge and advised him of his right to appeal. (*Id.*) Shoemaker

4

subsequently quit her job at TTCC, and the plaintiff never received a written decision finding him guilty of the disciplinary charge, as required to properly prepare his appeal. (*Id.* at 17–18.)

## C. ANALYSIS

The Complaint asserts federal constitutional claims of failure to protect, denial of due process in disciplinary proceedings, and deliberate indifference to serious medical needs. It also asserts a common law claim of negligent failure to protect. (Doc. No. 1 at 20–22.)

### 1. Failure to protect

The Eighth Amendment's Cruel and Unusual Punishments Clause requires that convicted inmates be protected from known dangers to their personal health or safety. An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by other inmates. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). The inmate must show that the defendant prison official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847).

Plaintiff does not claim that the defendants he sues for failure to protect, Defendants Crawford, Mitchell, and Huggins, were subjectively aware that he was at risk of being attacked on October 5, 2024, when he was injured by gang-affiliated inmates. Instead, the basis for his failure-to-protect claim appears to be the decision by these three defendants to return him to general population after the attack. However, "the complaint contains no allegations that Plaintiff came to

5

any physical harm" after his return to general population—"much less that Defendants were aware of any [subsequent] threats or harm." *Sparks v. Clark*, No. 2:25-CV-7, 2025 WL 879672, at *4 (W.D. Mich. Mar. 21, 2025) (citing *Walker v. Carbor*, No. 24-cv-11093, 2024 WL 2788398, at *7 (E.D. Mich. May 30, 2024) (dismissing failure-to-protect claim against defendant officers where the plaintiff had previously been assaulted by inmates, but where after his release into general population, he did not suffer any further physical injury from any inmate) (citing 42 U.S.C. § 1997e(e))). While the plaintiff may object that he faced an obvious risk of harm in general population from gang members who reside there (even if they do not reside in the unit where he is housed), he does not allege that the defendants were aware of his exposure to any specific risk. "[A] prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011). Accordingly, the Complaint fails to state a plausible failure-to-protect claim under the Eighth Amendment.

2. Due process

The plaintiff sues Correctional Hearing Officer Shoemaker for violating his due process rights. Shoemaker, who heard the disciplinary charge of assault on an inmate without a weapon, allegedly proceeded with the hearing despite the absence of the plaintiff's staff advisor, refused the plaintiff's requests to call witnesses, refused his request to view the security video of the incident, and found him guilty without a written disposition explaining the finding of guilt. Shoemaker then quit her job at TTCC, and the plaintiff thereafter grieved her handling of his hearing to TTCC Warden Vantell. (Doc. No. 1 at 18.)

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process

6

Clause..., (2) that they were deprived of this protected interest..., and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2 (6th Cir. July 28, 2022) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). "The mere fact of discipline or the imposition of sanctions in prison does not automatically trigger due process protections." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).

Here, the plaintiff does not provide any factual detail about the punishment he faced or ultimately received on the charge of assaulting another inmate without a weapon, other than concluding his Complaint with a request to be released from punitive segregation. (Doc. No. 1 at 24.) He thus fails to establish that due process safeguards were required.[1] The Complaint alleges that Shoemaker refused to call the witnesses requested by the plaintiff—"C-building Unit Manager Mrs. Saunders" and "Internal Affairs Mrs. Peterson"— because "she was not going to call witnesses from general population to a hearing involving a segregation inmate," and because "staff reports gave a full picture of the incident." (Doc. No. 1 at 15–17.) Witnesses and documentary

---

[1] "When there is a protected due process liberty interest at stake in a prison disciplinary proceeding, the Due Process Clause requires that an incarcerated person must receive (1) written notice of the charges against him at least twenty-four hours prior to the proceeding; (2) a written statement by the factfinders of the evidence relied on and the reason for the disciplinary action taken; (3) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not threaten institutional safety or correctional goals; and (4) where the inmate is illiterate, aid from a fellow inmate or member of the prison staff." *Barnes v. Garner*, No. 3:18-CV-01030, 2020 WL 4339649, at *8 (M.D. Tenn. July 27, 2020), *report and recommendation adopted*, 2020 WL 4735140 (M.D. Tenn. Aug. 14, 2020) (citing *Wolff*, 418 U.S. at 563–70).

7

evidence may be excluded from a prison disciplinary hearing if they are "irrelevant or repetitive." *Scruggs v. Jordan*, 485 F.3d 934, 939–40 (7th Cir. 2007). And officials presiding at a prison disciplinary hearing "must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566. The Complaint in this case does not sufficiently allege that the plaintiff had a protected liberty interest at stake in the hearing of his disciplinary charge. Accordingly, the claim against defendants Shoemaker and Vantell will be dismissed.

### 3. Medical needs

The plaintiff received treatment at an outside hospital following his injuries in October 2024, and left with orders for follow up care and eventual facial surgery. The plaintiff was not returned to the hospital for follow up or surgical care, nor did he receive further treatment at TTCC. He requested care at TTCC, but was told that his x-rays on November 6, 2024 showed no significant findings. (Doc. No. 1 at 18–19.) The plaintiff made repeated sick call requests related to his migraine pain and his desire to follow the hospital physician's orders but received no response from TTCC's medical department. (*Id.* at 19.) He claims that this lack of attention to his medical needs violated his rights under the Eighth Amendment, and that John Doe #1 and John Doe #2 are liable because they are both responsible for arranging for specialized medical care outside the prison, and John Doe #1 is responsible for medical care in general at TTCC. (*Id.*)

An Eighth Amendment violation is colorably claimed when prison officials are deliberately indifferent to a prisoner's serious medical needs. Such a claim has both an objective and a subjective component. As applied to this case, the objective component requires that the plaintiff's residual facial injuries and migraine headache pain present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), *i.e.*, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If they do present such a need, the subjective component requires that the defendants understood yet consciously disregarded that need to treat the plaintiff's condition without delay. *See Rhinehart*, 894 F.3d at 738; *see also Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (describing deliberate indifference as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm") (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

The plaintiff alleges that he "is in great pain and his face is visually caved in," and that he is at risk of "permanent disability" if surgery is not performed as recommended by the hospital physician. (Doc. No. 1 at 19.) While "[a] prison doctor's failure to follow an outside [physician's] recommendation does not necessarily establish inadequate care," *Rhinehart*, 894 F.3d at 742, the court finds that the Complaint's allegations are sufficient at this initial stage to establish a plausible claim that the plaintiff's medical needs are sufficiently, objectively serious, and that his TTCC medical providers were deliberately indifferent in failing to respond to his requests for treatment of migraine pain and for further evaluation of his surgical needs. This claim will proceed for further development.

### III. CONCLUSION

As explained above, Defendants Crawford, Mitchell, Huggins, Shoemaker, and Vantell are **DISMISSED** from this action.

The Clerk is **DIRECTED** to send the plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for the remaining defendants, John Doe #1 and John Doe #2. Because process cannot be served upon unidentified individuals, the plaintiff **MUST** exercise due diligence

9

and conduct a reasonable investigation to promptly determine the full names of these defendants so that process can be timely served under Federal Rule of Civil Procedure 4(m). The plaintiff **MUST** then file a motion to amend the Complaint to name the defendants. Upon referral, the Magistrate Judge may take any necessary action related to service of process upon the unnamed defendants, including providing for the plaintiff to serve early, limited discovery to ascertain their identity or ordering the TTCC warden to provide identifying information.

The plaintiff **MUST** identify the defendants, complete the service packet(s), and return them to the Clerk's Office within **45 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet(s), the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on the defendant(s). Fed. R. Civ. P. 4(b) and (c)(3).

The court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____

Aleta A. Trauger
United States District Judge

10